IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LEE R. MOLINE                                                PLAINTIFF


        v.                        CIVIL NO. 10-3093


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                        DEFENDANT


## MEMORANDUM OPINION

        Plaintiff, Lee. R. Moline, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

## I.      Procedural Background:

        Plaintiff protectively filed his current applications for DIB and SSI on February 11, 2009,

alleging an inability to work since April 16, 2008, due to his left knee and right ankle.  (Tr. 115,

123, 146).   An administrative hearing was held on April 6, 2010, at which Plaintiff appeared

with counsel and testified. (Tr. 32-53).

        By written decision dated June 21, 2010, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 11).

Specifically, the ALJ found Plaintiff had the following severe impairments: high blood pressure;

obesity; and degenerative changes of both knees and the right ankle. The ALJ further found that

Plaintiff's alleged diabetes and cognitive impairments were non-severe. (Tr. 11). After

reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not

meet or equal the level of severity of any impairment listed in the Listing of Impairments found

in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the

residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except
> cannot climb ropes or ladders; occasionally climb stairs and ramps; and
> occasionally crouch, crawl, kneel, stoop, or balance.

(Tr. 13). With the help of a vocational expert, the ALJ determined Plaintiff could perform work

as a bench hand assembler, a press operator, and a zipper machine operator. (Tr. 16).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on August 27, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action.

(Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5).

Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

## II.    Evidence Presented:

At the time of the administrative hearing held before the ALJ on April 6, 2010, Plaintiff,

who was thirty-nine years of age at the time, testified that he lived with his girlfriend and that

he had three minor children. (Tr. 35, 41). The record reflects Plaintiff's past relevant work

consists of work as a truck driver and a certified nurse assistant.

-2-

The medical evidence dated prior to the relevant time period showed Plaintiff sought treatment for right foot pain, a left tibia fracture, left wrist pain and right knee pain. (Tr. 264, 296-297, 299, 396-401).

The medical evidence during the relevant time period reflects the following. On April 23, 2008, Plaintiff entered the Baxter Regional Medical Center emergency room complaining of right ankle pain. (Tr. 279). Plaintiff reported that he had been in a 4-wheeler accident. X-rays of the right ankle revealed an acute fracture involving the medial malleolus, and likely the posterior malleolus. (Tr. 280). X-rays of the right tibia revealed a fracture in the distal tibia. (Tr. 282). Plaintiff was diagnosed with a right ankle fracture. Plaintiff was prescribed a tall walking boot and crutches, and instructed to follow-up with Dr. Terry Green. Plaintiff was prescribed fifty Demerol, fifty Phenergan and given a prescription for Lorcet.

On April 29, 2008, Plaintiff underwent an open reduction and internal fixation of a trimalleolar right ankle fracture performed by Dr. Green. (Tr. 283-296, 311-313, 323-326). Dr. Green noted that Plaintiff was negative for depression or anxiety. Dr. Green noted Plaintiff was kept in the hospital a little longer for his ankle fracture due to severe pain. Dr. Green noted Plaintiff was unable to ambulate for a few days, but at the time of discharge on May 3, 2008, Plaintiff's wound check was satisfactory and he was "touchdown weightbearing." Dr. Green noted that post operative x-rays revealed precise reduction and fixation. (Tr. 319, 338). Dr. Green noted Plaintiff also had some effusion of the right knee, but a MRI did not show torn ligaments or meniscal injuries. (Tr. 320, 335). Plaintiff was discharged with instructions to take Aspirin and Lortab.

-3-

On May 8, 2008, at the request of Dr. Green, Plaintiff was seen by Dr. Jeryl G. Fullen. (Tr. 314).  Dr. Fullen noted Plaintiff was concerned about swelling and bruising of the right extremity.   After examining Plaintiff and reviewing x-rays, Dr. Fullen diagnosed Plaintiff with postoperative right bimalleolar ankle fracture fixation.  Dr. Fullen scheduled Plaintiff to undergo a right lower extremity doppler study, which revealed no evidence of acute deep venous thrombosis.  (Tr. 278, 337).

On May 21, 2008, Plaintiff complained of right ankle pain.  (Tr. 316, 322).  Treatment notes indicated Plaintiff's cast was removed.  Upon examination, Dr. Green noted good wound healing on both sides of Plaintiff's right ankle, and good nerve and vascular function.  Dr. Green recommended Plaintiff use a cast boot and that he start weight bearing tolerance.

On November 26, 2008, Plaintiff complained of a fever, nasal discharge, facial tenderness and frontal headaches.  (Tr. 306).  Dr. Ronald Burton diagnosed Plaintiff with sinusitis and prescribed a Z-pak.

Treatment notes dated November 30, 2008, indicated Plaintiff was "seen as a new patient for Dr. Elders.[1]"  (Tr. 304). Treatment notes indicated Plaintiff had headaches and a history of myalgias/arthralgias for greater than one year.   Dr. Burton also noted Plaintiff would be undergoing a MRI of the right knee.   Plaintiff was diagnosed with hypertension.

On December 5, 2008, Plaintiff complained of an upper respiratory infection.  (Tr. 303). Dr. Burton noted Plaintiff had been prescribed a Z-Pak and a cough medication.  Dr. Burton

---

[1]The record also contains a progress note dated November 30, 2008, wherein Dr. Burton noted Plaintiff was in for a alcohol detox follow-up.  (Tr. 305). There is no evidence to suggest that Plaintiff had a drinking problem.

-4-

noted Plaintiff was not coughing anymore, but he continued to have ear congestion.  Plaintiff was diagnosed with eustachian tube dysfunction and prescribed medication.

On December 18, 2008, Plaintiff complained of continued ear problems.  (Tr. 302). Plaintiff reported that the decongestant had not helped.  Plaintiff received a steroid shot and was continued on his medication.

On January 8, 2009, Plaintiff complained of sinus problems, and knee and ankle pain. (Tr. 301).  Dr. Burton noted Plaintiff reported experiencing pain in his right ankle, as well as having problems with his left knee.  Plaintiff also reported experiencing chronic sinus problems. Plaintiff was diagnosed with chronic sinusitis and osteoarthritis of the left knee.  Dr. Burton noted that he was going to order x-rays of both of Plaintiff's knees, and he started Plaintiff on Relafen, an anti-inflammatory.  Plaintiff was also started on a steroid pack for his sinuses.

On January 15, 2009, Plaintiff was seen by Dr. Burton.  (Tr. 300).  Dr. Burton noted that x-rays of Plaintiff's knee showed degenerative changes in the knee and ankle. (Tr.307).  Plaintiff reported that his knee pain was worse and, upon examination, Dr. Burton noted there was increased crepitance in the left knee.  Plaintiff indicated that he would like a referral with Dr. McBride for further treatment options.   Dr. Burton noted that Plaintiff denied headache, dizziness, tinnitus, vertigo, problems with vision or hearing, chest pain, shortness of breath, abdominal pain, numbness, tingling or weakness.  Plaintiff was diagnosed with hypertension and osteoarthritis, and was referred for an for an orthopedic exam.

On February 2, 2009, Plaintiff complained of left knee pain and right ankle pain.  (Tr. 308-310, 317-318, 333-334).  After examining Plaintiff and reviewing x-rays, Dr. Green diagnosed Plaintiff with traumatic arthropathy of the left knee and ankle; status post fracture of

AO72A
(Rev. 8/82)

the left proximal fibula; and fracture of the left tibia. Dr. Green opined that Plaintiff had a permanent impairment with regard to working at any "nonsedentary job." Plaintiff was to follow-up with Dr. Sakr for his arthritis issues, and if Plaintiff wanted to consider surgery, he was to follow up with Dr. Green. (Tr. 318).

On February 26, 2009, Plaintiff complained of pain and swelling in his left knee. (Tr. 328-332). In the review of systems, Dr. Safwan Sakr noted Plaintiff was negative for fatigue, weakness, headaches, loss of consciousness, numbness, tingling, poor memory, anxiety or depression. Upon examination, Dr. Sakr noted Plaintiff was overweight and that Plaintiff walked with an antalgic gait. Plaintiff was diagnosed with advanced osteoarthritis of the left knee status-post several arthroscopic surgeries and intercritical gout with CRI (chronic renal insufficiency).

On March 13, 2009, Plaintiff was in for a review of the work-up for Plaintiff's gout. (Tr. 347). Plaintiff was diagnosed with intercritical gout CRI and was prescribed medication.

An undated medical notation noted Plaintiff was having pain and swelling in his left knee. (Tr. 348)

On April 6, 2009, Plaintiff underwent lab testing that revealed a normal enalapril renogram. (Tr. 384). A renal ultrasound revealed unremarkable kidneys and a fatty infiltration of the liver. (Tr. 385).

On April 28, 2009, Plaintiff underwent a general physical examination performed by Dr. K. Simon Abraham. (Tr. 349-354). Plaintiff complained of bilateral knee impairments and right ankle pain. Plaintiff reported a history of knee and ankle surgeries. Plaintiff indicated that he lived with his six year old child. Dr. Abraham noted that Plaintiff was "a big man." Upon examination of Plaintiff's spine and extremities, Dr. Abraham noted Plaintiff had limitations in

-6-

flexion of the left knee, as well as limitation in dorsiflexion and plantar flexion of the right ankle. Dr. Abraham noted Plaintiff had a normal gait. Upon a limb function evaluation, Dr. Abraham reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel; to walk on toes with difficulty; and to squat and arise halfway up and down. After evaluating x-rays of Plaintiff's right ankle and right and left knees, Dr. Abraham diagnosed Plaintiff with pain in both knees and pain in the right ankle. Dr. Abraham noted the following limitations:

> [Plaintiff] was able to walk, stand, sit, carry, handle, finger, see, hear [and] speak. There was limitations of movement in the [left] knee and [right] ankle. Dr. Green's evaluation would be very helpful in determining disability.

(Tr. 353).

On April 30, 2009, Dr. Ronald Crow, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry ten pounds, frequently less than ten pounds; could stand and/or walk for at least two hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 357-364). Dr. Crow opined Plaintiff could never climb ladders, ropes and scaffolds, but could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. Dr. Crow noted that manipulative, visual, communicative or environmental limitations were not evident. On June 19, 2009, after reviewing additional medical records, Dr. Bill F. Payne affirmed Dr. Crow's April 30, 2009 assessment. (Tr. 390). On June 23, 2009, Dr. Payne reviewed additional medical evidence, and opined that the RFC statement was affirmed as written. (Tr. 392).

On June 20, 2009, after reviewing the medical evidence, Dr. S. Latchamsetty affirmed the RFC assessment of Drs. Crow and Payne. (Tr. 393-394). Dr. Latchamsetty made the following comments:

> Claimant had fracture left ankle in 4/08 which was treated surgically. Currently alleges pain in ankle and knees. Had old fracture in left knee. Fracture ankle healed. There is no evidence of arthritis or deformity as per current x-ray. No significant findings on knee x-rays except for hardware from previous fracture. Gait was described as normal at CE dated 4/28/09. Even though claimant alleges worsening of knee pain as of 4/20[0]9, CE dated 4/28/09 shows claimant's gait was normal. Based on the evidence RFC is not unreasonable.

(Tr. 393).

On February 8, 2010, Plaintiff underwent a consultative neuropsychological evaluation performed by Dr. Vann Arthur Smith. (Tr. 403-406). Dr. Smith noted that medical records were being requested for review. Dr. Smith noted Plaintiff's memory was impaired and his judgment and insight were intact. Test results showed Plaintiff's Full Scale IQ was 93. After evaluating Plaintiff, Dr. Smith opined that Plaintiff's clinical history, mental status examination and neuropsychodiagnostic screening test profile data revealed a pattern of abnormal responses and pathgnomonic indices consistent with the presence of diffuse organic brain dysfunction of moderate severity. Dr. Smith opined that Plaintiff was disabled.

Dr. Smith also completed a mental RFC questionnaire opining Plaintiff's current global assessment of functioning score was 35, and his highest was 80. (Tr. 407-411). Dr. Smith opined Plaintiff's prognosis was fair. Dr. Smith noted Plaintiff's signs and symptoms were as follows: mood disturbance, difficulty thinking and concentrating, psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional

-8-

abilities; emotional lability; easy distractibility; memory impairment-short, intermediate and long term; and sleep disturbance. Dr. Smith opined Plaintiff was seriously limited, but not precluded or unable to meet competitive standards in twenty of twenty-five areas of functioning.  Dr. Smith further opined Plaintiff would miss work more than four days per month due to his impairments.

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

IV.    **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

A.    **Plaintiff's Impairments:**

The ALJ found that Plaintiff had the following severe impairments: high blood pressure; obesity; and degenerative changes of both knees and the right ankle. However, the ALJ found that Plaintiff's diabetes and cognitive disorder were not severe impairments. (Tr. 11).

-10-

With regard to Plaintiff's diabetes, the ALJ pointed out that Plaintiff reported he was diagnosed with diabetes in February of 2009, and that it affected him by making him feel tired. (Tr. 43). The ALJ noted that when Plaintiff was examined in April of 2009, he did not report that he had been diagnosed with diabetes. The ALJ also noted that while the medical evidence showed Plaintiff had some fluctuating blood sugar levels, there was no evidence showing that Plaintiff had been diagnosed with diabetes. Furthermore, in February of 2009, Plaintiff denied experiencing fatigue or weakness. (Tr. 329). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's diabetes was not a severe impairment.

With regard to Plaintiff's alleged cognitive impairment, the ALJ specifically addressed the findings of Dr. Smith, specifically that Plaintiff had a cognitive impairment that rendered him disabled, and declined to give Dr. Smith's findings substantial weight. In doing so, the ALJ pointed out that Dr. Smith's findings were not supported by other evidence of record; that Plaintiff received no treatment for this alleged impairment; and that there was no reference of a mental impairment in any of the other medical records. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)(the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). It is also noteworthy that Dr. Smith did not review any of Plaintiff's prior medical records.

Courts have affirmed decisions in which one-time examination reports from Dr. Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing

-11-

psychologists"). In <u>Clement v. Barnhart</u>, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." <u>Id</u>. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Smith's opinions. <u>See</u> <u>Cole v. Astrue</u>, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record); <u>Partee v. Astrue</u>, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith); <u>Haarstad v. Astrue</u>, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009). The court in <u>Cole</u> also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1. After reviewing the record, the Court finds that substantial evidence of record supports the ALJ's determination to give Dr. Smith's opinion little weight.

A review of the medical records further reveals that in February of 2009, Plaintiff denied experiencing memory problems, anxiety or depression to Dr. Sakr. (Tr. 329). Plaintiff also did not indicate that he was experiencing any cognitive problems when he completed a Function Report in February of 2009. (Tr. 168). Finally, it is noteworthy that Plaintiff did not allege a mental impairment when he applied for benefits. <u>See</u> <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). Based on the record as a whole, the Court finds

-12-

substantial evidence to support the ALJ's determination that Plaintiff's alleged mental impairment was not severe.

### B.    Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's right ankle impairment, the record reflects that Plaintiff fractured his ankle in a four-wheeler accident in April of 2008.  Plaintiff underwent an open reduction and internal fixation of the right ankle on April 29, 2008, and on May 21, 2008, Dr. Green, Plaintiff's surgeon, noted that Plaintiff's right ankle had good wound healing and good nerve and vascular function.  The record shows that in April of 2009, Dr. Abraham noted

-13-

Plaintiff had decreased flexion and dorsiflexion of the right ankle, but that Plaintiff had a normal

gait. Dr. Abraham also noted that Plaintiff could stand and walk without assistive devices; could

walk on heels; and could walk on toes with some difficulty.  Dr. Abraham further noted that Dr.

Green's evaluation of Plaintiff's ankle would be helpful information.  The record reveals that Dr.

Green opined Plaintiff had a permanent impairment from working a "nonsedentary" job, which

the ALJ took into account when he determined Plaintiff's RFC, as discussed below.  Based on

the record as a whole, the Court finds substantial evidence supporting the ALJ's determination

that Plaintiff did not have a disabling right ankle impairment.

With regard to Plaintiff's alleged knee impairments, the ALJ noted that Plaintiff had

sought treatment, and even underwent surgical repair of the left knee prior to the onset date.

However, the medical evidence during the relevant time period revealed Plaintiff underwent a

MRI of the right knee which did not show torn ligaments or meniscal injuries.  The ALJ noted

that x-rays of Plaintiff's left knee in January of 2009, revealed osteoarthritis and that Plaintiff

was prescribed Relafen, an anti-inflammatory.  Medical evidence dated in February of 2009

revealed that  Plaintiff's left knee was tender, but his right knee was non-tender.  The ALJ noted

that after examining Plaintiff in April of 2009, Dr. Abraham noted Plaintiff walked with a

normal gait; that Plaintiff was able to walk without assistive devices; and that Plaintiff was able

to squat halfway down and arise.  Dr. Abraham also noted that Plaintiff could walk, sit and stand.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's

determination that Plaintiff does not have a disabling knee impairment.

As for Plaintiff's obesity, the Court notes that Plaintiff did not allege obesity in his

application and did not testify to any limitations caused by his obesity at the administrative

-14-

hearing. See Thompson v. Astrue, 226 Fed. Appx. 617, 620 (8th Cir.2007) (holding that the ALJ did not err in failing to obtain the testimony of a VE where the claimant failed to claim obesity as a disabling condition).

As for Plaintiff's hypertension, the medical evidence reveals that Plaintiff's blood pressure was regulated with the use of medication. Impairments that are controllable or amenable to treatment do not support a finding of disability. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Function Report dated February 18, 2009, Plaintiff indicated that he was able to take care of his son; to do laundry and other household chores; to take care of his personal needs; to go outside daily and to drive; and to shop for grocery's. (Tr. 163). Plaintiff also reported in a Questionnaire dated March 24, 2010, that he was able to drive, cook, wash dishes, make his bed, and take care of his child daily; and could dust, vacuum, mop, do laundry and talk to his neighbors weekly. (Tr. 234). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir.1996) (the ability to care for animals, shop, do odd jobs and visit town tends to prove claimant was able to work).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

-15-

**B.      RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In finding Plaintiff able to perform sedentary work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical examiners.

The record reveals that Plaintiff's treating surgeon, Dr. Green, opined Plaintiff had a permanent impairment with regard to any "nonsedentary job."  In finding Plaintiff could perform sedentary work, the ALJ clearly gave Dr. Green's opinion substantial weight.  Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight).  The ALJ's RFC finding is also support by Dr. Abraham, who after examining Plaintiff and many radiological studies, opined Plaintiff could

-16-

sit, stand, walk, carry, handle and finger.  Based on our above discussion of the medical evidence and Plaintiff's activities throughout the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC determination.

      **D.**      **Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a bench hand assembler, a press operator, a zipper machine operator.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.**      **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 9th day of February 2012.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-17-